MITCHELL, HENRY CLAY, Jr., Associate Judge.
Appellants take timely consolidated appeals from adverse judgments and sentences resulting from the same unsuccessful marijuana smuggling scheme.
Specifically, the Appellants were convicted of the possession of cannabis in excess of one hundred pounds and the importation of cannabis in violation of Section 893.13(l)(a), Florida Statutes (1977) and Section 893.-13(l)(d), Florida Statutes (1977).
This case results from an attempt to import excess of 2,000 pounds of cannabis, which resulted in a total of sixteen persons being criminally charged. The attempt was thwarted from the beginning when law enforcement officials engaged the services of King, operator of a marina, as an undercover agent. Shortly after he was enlisted as an undercover agent, King’s assistance was solicited by the alleged ringleader of the smuggling operation, Renfroe. Renfroe and his associates were under almost constant surveillance from the very beginning, until the arrest which took place during the early morning hours of July 21, 1977. Law enforcement officials who were assigned to this investigation were able to identify many members of the alleged conspiracy and were able to identify many of their vehicles weeks ahead of the actual arrest.
Although the investigation has revealed, generally, that Renfroe intended to bring to the Mexico beach area of Gulf County, a sizable quantity of marijuana, there was no definite information as to where it would be unloaded. One possible site for the unloading had been the dynamite docks on the Intercoastal Waterway located in Gulf County. Since the unloading point and the unloading vehicles were uncertain, several surveillance points were established on the evening of July 20. Offi *407 cer Steinbaugh was hiding in the woods near the dynamite docks. At about 1:00 a. m., on what was described as a very dark night, Steinbaugh saw a boat come up the canal and moor near three vehicles parked at the docks. The darkness prevented him from clearly seeing what activity took place but he radioed to other law officers when the vehicles were leaving. Officer Jerni-gan, stationed down the road, observed the three vehicles approach from the dock area and turn north on State Road 71. He radioed a description of a third vehicle as being a light colored 1976 Ford pickup with camper shell. This vehicle, in which Appellants, Stronach, Dunlap and McCann were riding, had never been seen in connection with the investigation prior to this time. The vehicle was proceeding in a lawful manner when it was stopped by the police. The truck was stopped, the keys to the camper shell secured, the back was searched and cannabis was found, after which the three men were arrested. There was no search warrant. All three Appellants, Stronach, Dunlap and McCann filed motions to suppress based upon an improper arrest and illegal search and seizure. These motions were denied. We agree with Appellants, Stronach, Dunlap and McCann that the search was improper and reverse.
The case law has clearly established that if police have a well founded suspicion that the occupants of a vehicle might be involved in a criminal activity, they have a right to stop the vehicle for reasonable investigation and interrogation. State v. Payton, 344 So.2d 648 (Fla. 2d DCA 1977). The record discloses that no officers had any knowledge or information concerning the Appellants or the vehicle occupied by the Appellants. No one had any way of knowing exactly where the marijuana was going to be unloaded. There were several possible sites, one of which was the dynamite docks. Also, Steinbaugh observed three vehicles around the site of the dynamite docks, some of whose occupants were fishing. While those three vehicles were at the dynamite docks, he observed a boat moored there. He was unable to tell whether or not anything was being unloaded off the boat or loaded into the Appellants’ vehicle. When the vehicles left the site of the dynamite docks, Officer Stein-baugh transmitted a message to the fact that he thought the vehicles had been loaded and they were leaving the area. Clearly, no facts were observed or broadcasted to other officers that the occupants of the third truck, the Appellants’ truck, had engaged in any criminal activity. Officer Steinbaugh did not see that the Appellants’ vehicle had been loaded with any marijuana. In addition, the officer had no observations that any marijuana was even involved in the activities at the docks. The facts do not support a well-founded suspicion of criminal activity. Therefore, the search of the vehicle was illegal and the evidence obtained therefrom was improperly seized.
We have considered the remaining points urged for reversal by the Appellants, Lau-rich and Currie, but find them to be without merit.
Accordingly, as to Appellants, Stronach, Dunlap and McCann, we reverse the judgments and convictions with directions that the Appellants, Stronach, Dunlap and McCann be discharged. The judgments and convictions of Laurich and Currie are affirmed.
MILLS, C. J., concurs.
ROBERT P. SMITH, Jr., J., concurs specially.